Robert J. Basil, Esq. (NJ Attorney Id. No. 025721988)
**The Basil Law Group, P.C.**
1270 Broadway, Suite 305
New York, NY 10001
(917) 512-3066
(831) 536-1075 (Fax)
Attorneys for Young Man Kim

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In re:<br><br>KENNETH RHEE,<br><br>Debtor.<br>―――――――――――――<br>YOUNG MAN KIM,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH RHEE,<br><br>Debtors.<br>(Adversary Action) | Chapter 7<br><br>Case No. 17-11198 (SLM)<br><br>Adversary No. |
|---|---|

**COMPLAINT IN FRAUD AND OBJECTING TO DISCHARGE OF CERTAIN DEBTS PURSUANT TO 11 U.S.C. §523 AND OBJECTING TO DISCHARGE OF DEBTOR PURSUANT TO 11 U.S.C. §727**

Plaintiff Young Man Kim ("Plaintiff"), by and through his counsel, the Basil Law Group, P.C., Attorneys at Law, as and for its Complaint against Kenneth Rhee (hereinafter "Debtor") seek judgment in Plaintiff's favor, and also to deny certain of the Debtors' bankruptcy discharges, avers as follows:

1. On January 20, 2017, the Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code. On January 21, 2017, Nancy Isaacson was appointed Chapter 7 Trustee.

1

The deadline to file a complaint objecting to the Debtors' discharge was set at April 18, 2017, although Plaintiff has timely filed for an extension, which is pending.

2. The court has core jurisdiction over the within action pursuant to 28 U.S.C. Section 1334(b) and 28 U.S.C. Sections 157(b)(2)(A), (I), (J) and (O), since this matter concerns the administration of the Debtor's estate and determination as to the dischargeability of debt, as well as other proceedings affecting the adjustment of a debtor-creditor relationship.

3. Venue is proper in this district under Section 1409(a) of the Bankruptcy Code.

4. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Plaintiff consents to the entry of Final Orders and Judgments by the Bankruptcy Court.

5. The within pleading is brought by the Plaintiff in this adversary action to obtain judgment against the Debtor and to bar the discharge of debts pursuant to Section 523 and 727 of the Bankruptcy code and Federal Rules of Bankruptcy Procedure 4004, 4007 and 7001 to determine the dischargeability of the Debtors' guarantee obligations owed to the Plaintiff and the dischargeability of all of the Debtors' debts.

## THE PARTIES

6. Plaintiff is an individual residing in the state of New Jersey.

7. Debtor is an individual residing at his last known address at 224 Mulberry Place Ridgewood, NJ 07450.

## FACTUAL BACKGROUND – KKR PARTNERS, INC.

8. On or about February 15, 2006, Plaintiff, Debtor, and Sei-Jun Park formed KKR Partners, Inc. ("KKR") and each acquired 33.33% ownership interests. The purpose of KKR was to own and operate one or more dry cleaning establishments.

2

9. During the course of KKR's operations, Debtor was the manager in charge of the dry cleaning business, and Plaintiff was a passive shareholder.

10. Unbeknownst to Plaintiff, throughout the existence of KKR, Debtor was systematically syphoning cash receipts out of the KKR business and taking them for his own benefit, as he intended to do from the onset of discussions of a business relationship with Plaintiff.

11. In reliance upon Debtor's promises of honest and competent management, and a representation that no debts would be incurred without Plaintiff's consent, Plaintiff executed the corporate formation documents as well as the guarantees of KKR debts.

12. During September 2014, being disappointed in the lack of profitability of KKR and concerned about his liability for KKR's debts, Plaintiff demanded that Debtor arrange for all of Plaintiff's KKR stock to be purchased and for the cancellation of his personal guarantees by termination or assignment.

13. Debtor informed Plaintiff that he would have Younghwan Kim purchase Plaintiff's shares in KKR for $20,000.00 and that the Plaintiff's personal guarantees would be replaced by those of Younghwan Kim and, to the extent that they could not be replaced, that no further debts would be incurred that were subject to Plaintiff's existing personal guarantees.

14. In reliance upon the aforementioned fraudulent representations of Debtor, on September 15, 2014, Plaintiff sold all of his shares in KKR to Younghwan Kim for $20,000.00.

15. On September 15, 2014, the total debt of KKR subject to Plaintiff's personal guarantees was $220,000, and all KKR obligations subject to Plaintiff's personal guarantees, including KKR's loan payments and lease payments, were current.

A. **The Capstone Obligations.**

16. On May 31, 2006, KKR entered into a lease for a business location in Edgewater New Jersey, owned by Capstone Marketplace, LLC. ("Capstone")

17. In reliance upon the aforementioned fraudulent representations of Debtor, Plaintiff executed a personal guarantee of KKR's lease obligations to Capstone.

18. Because of the mismanagement and misappropriations of Debtor, the Capstone lease went into default.

19. Plaintiff was sued by Capstone in Superior Court of New Jersey, Law Division, Bergen County on March 28, 2016, for the entire amount due to Capstone, approximately $54,000, based upon Plaintiff's guarantee, plus interest and attorney's fees.

20. To avoid legal fees and the potential for a much larger judgment, Plaintiff settled the case with Capstone for $35,000.

**B. The Eastern Funding Obligations.**

21. On or about May 3, 2011, Debtor executed a $121,200 Promissory Note in favor of Eastern Funding LLC, a lender well known in the Korean community. The Promissory Note ("EF Note #5708") evidenced a loan to 45 South Broad LLC, an entity in which neither KKR nor Plaintiff held any interest.

22. Debtor and his partner, Kyung Dong Kim, guaranteed the payment of EF Note #5708; Plaintiff was not involved in this borrower or loan, and signed nothing related to this loan.

23. On March 20, 2013, KKR obtained a loan from Eastern Funding in the amount of $79,800, evidenced by a Promissory Note ("EF Note #7404").

24. EF Note #7404 was personally guaranteed by Plaintiff based upon the aforementioned fraudulent representations of Debtor, and such guarantee purported to cover the "existing and future liabilities" of KKR.

25. To induce Plaintiff to personally guarantee EF Note #7404, in addition to his previously delivered fraudulent representations regarding management of the dry cleaning business, Debtor fraudulently represented to Plaintiff that there were no existing liabilities of KKR, and that no future liabilities would be incurred without obtaining Plaintiff's consent.

26. In (detrimental) reliance upon these fraudulent representations of Debtor, Plaintiff executed the aforementioned personal guarantee for EF Note #7404.

27. Contrary to Debtor's fraudulent representations, he always intended to syphon money out of KKR for his own benefit and to later attempt to make Plaintiff personally liable for EF Note #5708, retroactively, and then for additional liabilities of KKR, and then for additional fraudulent conduct Debtor undertook over the next twenty months.

28. On about November 25, 2014, shortly after Plaintiff had sold his interests in KKR, Debtor entered into a new loan agreement with Eastern Funding, through which Debtor personally obtained $84,530, evidenced by Promissory Note #8598 ("EF Note #8598"). Plaintiff took no role in this loan, signed nothing and was not aware of it until much later, once Eastern Funding began collection efforts.

29. On about November 26, 2014, Debtor and Eastern Funding conspired and agreed to create a written contract for the sole purpose of making Plaintiff liable for all three Eastern Funding Notes, knowing at the time that all three notes were in jeopardy of default.

30. In furtherance of the aforementioned conspiracy and agreement, and without informing Plaintiff, Debtor, on behalf of himself, 45 South Broad LLC and KKR, entered into an Agreement of Cross Default, Collateral Security, and Guaranty ("Cross-Default Agreement").

31. The sole purpose of the Cross-Default Agreement was to attempt to make Plaintiff retroactively liable for EF Note #5708 and prospectively liable for EF Note #8598, all without

notifying Plaintiff, without affording Plaintiff the opportunity to object, and without providing Plaintiff with any consideration for such new obligations.

32. As a result of these fraudulent misrepresentations and incidents of misconduct, Plaintiff was subjected to a still-pending suit by Eastern Funding in Supreme Court of New York, Queens County, with a claim of $138,759.92 plus interests and attorney's fees, despite the fact that the sole obligation for which Plaintiff actually agreed to be liable for (albeit upon the fraudulent misrepresentation of Debtor) was EF Note #7404 which had an outstanding balance of only $37,057.51.

33. Continuing the fraudulent activity related to Eastern Funding, Debtor then agreed to pay Eastern Funding a total of approximately $26,000.00, leaving Plaintiff and another party, which subsequently settled with Eastern Funding, saddled with the remaining debt.

**FACTUAL BACKGROUND - REGENT PARTNERS CLAIMS**

34. On or about February 15, 2006, Plaintiff, Debtor, and Sei-Jun Park formed Regent Partners, Inc. ("Regent") and each acquired 33.33% ownership interests. The purpose of Regent was to own and operate one or more dry cleaning establishments.

35. During the course of Regent's operations, Debtor was the manager in charge of the dry cleaning business, and Plaintiff was a passive shareholder.

36. Unbeknownst to Plaintiff, throughout the existence of Regent, Debtor was systematically syphoning cash payments out of the Regent business and taking them for his own benefits.

37. In reliance upon Debtor's promises of honest and competent management, virtually identical to those made with respect to KKR, Plaintiff executed documents that caused creditors to attempt to collect Regent's debts from Plaintiff.

### A. The Citibank Liabilities

38. On about November 2, 2007, Debtor executed a Citibank loan application on behalf of Regent.

39. Plaintiff was told by Debtor and Citibank loan officer, Jimmy Chae, that by signing the application, Plaintiff was not subject to any personal obligation for the loan.

40. This understanding of Plaintiff's non-liability was confirmed by all parties by way of a Citibank loan application provision in which Citibank acknowledged that, "Business wants to remove signor on BCA and BCP Signors needed to be removed is Young Man Kim."

41. All three Regent members, as well as the Citibank loan officer, Jimmy Chae, signed this loan application acknowledging the mutual understanding that Plaintiff was not intended to be responsible for any of this loan obligation.

42. Following up on the aforementioned Citibank loan application, the three Regent members and Jimmy Chae executed addition loan documentation on December 27, 2007, containing the express recognition that Plaintiff had not yet been added to these loan obligations, those loan documents providing that "Business wants to add additional signer to the loan, Young Man Kim needs to be added onto the loan."

43. Plaintiff never agreed to be added to the Citibank loan.

44. Without informing Plaintiff, and without obtaining Plaintiff's permission or consent, Debtor subsequently added Plaintiff to the Citibank loan.

45. As a result of being added to the Citibank loan, Plaintiff was sued by Citibank's assignee in the Superior Court of New Jersey in a lawsuit seeking $135,534.93 from Plaintiff, in addition to interest, costs, and attorney's fees.

### COUNT I
### FRAUD IN THE INDUCEMENT

46. Plaintiff restates and incorporates the allegations above as if stated in full herein.

47. These fraudulent representations of Debtor referred to above were false, were intended to be false when stated, and were intended to induce Plaintiff to rely upon each of them to his detriment.

48. Plaintiff did rely upon each of them to his detriment, as stated above.

49. Plaintiff's reliance upon each of the fraudulent representations was reasonable.

50. As a proximate result of such fraudulent representations and Plaintiff's reasonable reliance, Plaintiff suffered damages.

51. Wherefore, Plaintiff demands against Debtor

　　a. Compensatory Damages;

　　b. Consequential Damages;

　　c. Incidental Damages;

　　d. Punitive Damages;

　　e. Pre-Judgment Interest;

　　f. Recession of any and all contracts and agreements between Plaintiff and Debtor;

　　g. Costs of suit, including reasonable attorney's fees; and

　　h. Such other relief as this Court may find appropriate.

## COUNT II
## FRAUD IN FACTUM

52. Plaintiff restates and incorporates the allegations above as if stated in full herein.

53. The fraudulent representations of Debtor referred to above were false, intended to be false when stated, and were intended to induce Plaintiff to rely upon each of them to his detriment.

54. Plaintiff did rely upon each of them to his detriment, as stated above.

55. Plaintiff's reliance upon each of the fraudulent representations was reasonable.

56. As a proximate result of such fraudulent representations and Plaintiff's reasonable reliance, Plaintiff suffered damages.

57. Wherefore, Plaintiff demands against Debtor

   a. Compensatory Damages;

   b. Consequential Damages;

   c. Incidental Damages;

   d. Punitive Damages;

   e. Pre-Judgment Interest;

   f. Recession of any and all contracts and agreements between Plaintiff and Debtor;

   g. Costs of suit, including reasonable attorney's fees; and

   h. Such other relief as this Court may find appropriate.

## COUNT III

**OBJECTION TO DISCHARGEABILITY OF DEBT
PURSUANT TO 11 U.S.C. § 523(a)(2)(A)
UNDER FALSE PRETENSES**

58. The foregoing paragraphs are incorporated herein as though set forth in full.

59. Section 523(a)(2) of the Bankruptcy Code provides:

   "(a)    a discharge under §727, 1141, 1228(a), 1228(b) or 1328(b) of this

Title does not discharge an individual debtor from any debt –

   ***

  (2) for money, property, services or an extension renewal or refinancing of credit to the extent obtained by

  (A) false pretenses or false representation or actual fraud. . ."

60. The claims of Plaintiff against Debtor stated in this complaint are non-dischargeable under §523(a)(2)(A) of the Bankruptcy Code.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court deny the Debtors a discharge for all claims made in this Complaint, and for such other and further relief as is just.

## COUNT IV

### OBJECTION TO DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(B) UNDER FALSE WRITTEN STATEMENTS OF FINANCIAL CONDITION

61. The foregoing paragraphs are incorporated herein as though set forth in full.

62. Section 523(a)(2)(B) of the Bankruptcy Code provides:

"(a) a discharge under §727, 1141, 1228(a), 1228(b) or 1328(b) of this Title does not discharge an individual debtor from any debt –

  ***

  (2) for money, property, services or an extension renewal or refinancing of credit to the extent obtained by

  (B) use of a statement in writing –

   (i) that is materially false;

   (ii) respecting the debtor's or an insider's financial condition;

   (iii) on which the creditor to whom the debtor is liable for such

10

money, property, services, or credit reasonably relied;

and

(iv) that the debtor caused to be made or published with intent

to

deceive"

63. The guarantee obligations owed by the Debtors to Plaintiff are non-dischargeable under §523(a)(2)(B) of the Bankruptcy Code.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court deny the Debtors a discharge for the claims raised in this Complaint and for such other and further relief as is just.

## COUNT V

### OBJECTION TO DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.S. § 523(a)(6)

64. The foregoing paragraphs are incorporated herein as though set forth in full.

65. Section 523(a)(6) provides:

"(a)   A discharge under §727, 1141, 1228(a), 1228(b) or 1328(b). This title does not discharge an individual debtor from any debt:

\*\*\*

(6)   for willful malicious injury by the Debtor to another entity or the property of another entity;"

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court deny the Debtors a discharge from the claims raised in this Complaint and for such other and further relief as is just.

## COUNT VI

## OBJECTION TO DISCHARGE PURSUANT TO U.S.C. § 727(a)(4)

66. The foregoing paragraphs are incorporated herein as though set forth in full.

67. Pursuant to Bankruptcy Code § 727(a)(4):

"(a)    The court shall grant the debtor a discharge, unless:

(4)    the debtor knowingly and fraudulently, in or in connection

with the case --

(A) made a false oath or account;

B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act;

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court deny the Debtors a discharge for the claims made in this Complaint, and for such other and further relief as is just.

Date: April 14, 2017

_____
Robert J. Basil, Esq.
**The Basil Law Group, P.C.**
Attorneys for Plaintiff, Young Man Kim
1270 Broadway, Suite 305
New York, NY 10001
(917) 512-3066
(831) 536-1075 (Fax)

12